UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JASON K. QUAID,              :    **CIVIL NO. 1:05-CV-1727**
                             :
        Plaintiff            :
    v.                       :    (Magistrate Judge Smyser)
                             :
MARYSVILLE BOROUGH, ET AL,   :
                             :
        Defendants           :


**MEMORANDUM AND ORDER**


I. Background and Procedural History.


    The plaintiff, Jason K. Quaid, commenced this action by
filing a complaint on August 23, 2005.


    The defendants named in the complaint are: 1) Marysville
Borough, 2) Carl Lehman, a police officer for the Marysville
Borough Police Department; 3) Norfolk Southern Corporation; 4)
Randall Sloan, a police officer for the Norfolk Southern Railroad
Police Department; and 5) the Norfolk Southern Police Department.


    The plaintiff alleges that on August 22, 2003, defendant
Sloan stopped the vehicle he was driving and that defendant
Lehman subsequently searched and arrested him.  The plaintiff
alleges that the stop, search and arrest were unlawful and were
the result of a pattern, practice and custom by the defendants of
subjecting citizens to unreasonable arrests and prosecutions in
the absence of proper authority and probable cause.  *Complaint at*

¶28.  The plaintiff alleges that defendants Lehman and Sloan acted willfully, deliberately, maliciously or with reckless disregard of his constitutional and statutory rights. *Id. at* ¶29. He alleges that he sustained pain, suffering, fear, severe anxiety, embarrassment, loss of liberty, confinement, property losses and emotional trauma as a result of the defendants' actions. *Id. at* ¶30.  He alleges that the defendants acted for the purpose of violating his constitutional rights by subjecting him to an unlawful search and seizure, unlawful arrest, and malicious prosecution. *Id. at* ¶31.

The plaintiff alleges that defendants Marysville Borough and Norfolk Southern encouraged, tolerated, ratified and have been deliberately indifferent to the need for more or different training, supervision, investigation and discipline of its officers. *Id. at* ¶35.  He alleges that defendants Marysville Borough and Norfolk Southern failed to properly sanction or discipline officers who conceal or aid and abet violations of constitutional rights of citizens by other officers, thereby causing and encouraging officers, including the defendants in this case, to violate the rights of citizens. *Id. at* ¶36.

The complaint contains two counts.  Count I contains 42 U.S.C. § 1983 claims.  The plaintiff claims that the defendants, acting under color of state law, deprived him of his right to be free from unlawful search and seizures, unlawful arrest, and malicious prosecution, his right to be secure in his person and

2

property, and his right to due process of law. *Id. at* ¶33. He bases his claims on the First, Fourth and Fourteenths Amendments to the United States Constitution. *Id. at* ¶37.  Count II contains state law claims of unlawful search and seizure, false arrest, malicious prosecution, and intentional infliction of emotional distress. *Id. at* ¶39.

As relief, the plaintiff is seeking compensatory damages, punitive damages, and attorney's fees and costs.

On October 10, 2005, defendants Lehman and Marysville Borough filed an answer to the complaint.  On October 26, 2005, defendants Lehman and Marysville Borough filed a supplemental answer to the complaint.

By an Order dated April 14, 2006, defendants Sloan, Norfolk Southern Corporation and Norfolk Southern Police Department were dismissed from this action.   The remaining defendants are defendants Lehman and Marysville Borough.

The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c).  The case is scheduled for a pretrial conference on October 19, 2006 and a jury trial beginning on November 6, 2006.

There are two motions currently pending: 1) the plaintiff's motion for leave to amend his complaint; and 2) the defendants' motion for summary judgment.

II.   Motion to Amend.

On July 31, 2006, the plaintiff filed a motion for leave to amend his complaint and a brief in support of that motion.  On August 2, 2006, the defendants filed a brief in opposition to the plaintiff's motion to amend.  No reply brief has been filed.

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a complaint "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a).  In this Circuit prejudice to the non-moving party is the touchstone for denial of leave to amend. *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993).  "In the absence of substantial or undue prejudice, denial instead must be based on bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment." *Id*.

The plaintiff is seeking to amend his complaint to add causes of action under the Constitution and state law for unlawful detention based on the length of time he was detained after he was arrested and for excessive use of force.  The defendants contend that leave to amend should not be granted

4

because the claims that the plaintiff wishes to add to this case
are barred by the statute of limitations.

The statute of limitations for a 42 U.S.C. § 1983 action is
the state statute that limits actions for personal injuries.
*Wilson v. Garcia*, 471 U.S. 361 (1985).  In Pennsylvania, the
applicable statute is 42 Pa.C.S. § 5524, which defines a two year
limitations period.  *Fitzgerald v. Larson*, 769 F.2d 160 (3d Cir.
1985).  The limitations period begins to run when the plaintiff
knows or had reason to know of the injury that constitutes the
basis for the action. *Sandutch v. Muroski*, 684 F.2d 252 (3d Cir.
1982).

The statute of limitations applicable to the § 1983 claims
and the state law claims that the plaintiff wishes to add to this
case is two years.  The statute of limitations began to run on
August 22, 2003, the date of the plaintiff's arrest.  The
plaintiff has not argued, nor is there a reasonable basis to
conclude, that the statute of limitations should be tolled for
any reason.  Thus, by the time the plaintiff filed his motion for
leave to amend, the statute of limitations had run on the claims
that he is seeking to add to this case.  Since the statute of
limitations has run, allowing the plaintiff to amend his
complaint would be futile.  Therefore, we will deny the
plaintiff's motion for leave to amend his complaint.

III.  Motion for Summary Judgment.

     On August 1, 2006, the defendants filed a motion for summary judgment, a statement of undisputed facts, a brief and documents in support of their motion.  On August 31, 2006, the plaintiff filed a response to the defendants' statement of undisputed facts, a brief and documents in opposition to the motion for summary judgment.  On September 15, 2006, the defendants filed a reply brief.

     A. Summary Judgment Standard.

     Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c). "The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, though the non-moving party must make a showing sufficient to establish the existence of each element of his case on which he will bear the burden of proof at trial." *Huang v. BP Amoco Corp.*, 271 F.3d 560, 564 (3d Cir. 2001); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

"A factual dispute is material if it bears on an essential element of the plaintiff's claim, and is genuine if a reasonable jury could find in favor of the nonmoving party." *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 580 (3d Cir. 2003). In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). "Our function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Federal Home Loan Mortgage Corp. v. Scottsdale Ins. Co.*, 316 F.3d 431, 443 (3d Cir. 2003).

B. Undisputed Facts.

The following facts are not in dispute for the purpose of the defendants' motion for summary judgment.

On August 22, 2003, the plaintiff left work at the New Cumberland Army Depot at approximately 12:00 a.m. *Statement of Undisputed Facts of Defendants, Marysville Borough and Patrolman Carl Lehman, individually and as a Patrol Officer for Marysville Borough Police Department at ¶3 and Plaintiff's Response to Defendants' Statement of Undisputed Facts at ¶3.* The plaintiff drove to Dillsburg to pick up his friend, Peter Koury, and then proceeded to Duke's Riverside Restaurant in Wormleysburg,

7

Pennsylvania. *Id. at ¶4.*  The plaintiff and Koury arrived at
Duke's Riverside Restaurant at approximately 1:05 a.m. on August
22, 2003. *Id. at ¶*5.  At Duke's Riverside Restaurant, the
plaintiff and Koury shared a pitcher of beer. *Id. at ¶*6.  They
left the restaurant at approximately 2:00 a.m. *Id.*

The plaintiff and Koury proceeded north on Routes 11/15 into
and through Marysville Borough, but they subsequently decided to
turn around and head south on Routes 11/15. *Id. at ¶10.*  The
plaintiff was smoking marijuana while driving his motor vehicle.
*Id. at ¶18.*  Koury was also smoking marijuana. *Id. at ¶23.*

While heading south on Routes 11/15, the plaintiff observed
the flashing lights of a police vehicle operated by Officer Sloan
of the Norfolk Southern Railroad Police Department. *Id. at ¶*11.
The plaintiff voluntarily brought his motor vehicle to a stop
prior to the Hess gas station located in Marysville Borough. *Id.
at ¶*13.  The stop occurred at 3:14 a.m. *Id. at ¶*29.

The plaintiff gave Officer Sloan his driver's license,
registration and insurance card. *Complaint at ¶15 and Answer of
Defendants, Marysville Borough and Patrolman Carl Lehman to
Plaintiff's Complaint at ¶15.*  Officer Sloan began to ask the
plaintiff questions concerning his driving and speed. *Id.*

8

Subsequently, defendant Lehman of the Marysville Borough Police Department arrived on the scene. *Statement of Undisputed Facts of Defendants, Marysville Borough and Patrolman Carl Lehman, individually and as a Patrol Officer for Marysville Borough Police Department at ¶14 and Plaintiff's Response to Defendants' Statement of Undisputed Facts at ¶14.* Officer Lehman smelled the marijuana which the plaintiff and Koury had been smoking. *Id. at ¶17.* The plaintiff was asked to step out of the vehicle. *Complaint at ¶17 and Answer of Defendants, Marysville Borough and Patrolman Carl Lehman to Plaintiff's Complaint at ¶17.* Defendant Lehman and the plaintiff proceeded to have a conversation about the plaintiff's whereabouts that evening. *Id. at ¶18.*

At some point, defendant Lehman reached into the plaintiff's pants pocket and pulled out the plaintiff's smoking pipe, at which time a small bag with a small amount of marijuana also fell out of the plaintiff's pocket. *Statement of Undisputed Facts of Defendants, Marysville Borough and Patrolman Carl Lehman, individually and as a Patrol Officer for Marysville Borough Police Department at ¶16 and Plaintiff's Response to Defendants' Statement of Undisputed Facts at ¶16.* Following the discovery of the pipe and small bag of marijuana, defendant Lehman arrested the plaintiff. *Id. at ¶24.* Defendant Lehman performed a search of the plaintiff's personal belongings including his wallet.

*Complaint at ¶20 and Answer of Defendants, Marysville Borough and Patrolman Carl Lehman to Plaintiff's Complaint at ¶20.*

Defendant Lehman transported the plaintiff to the police station and they arrived at the station at 3:34 a.m. *Statement of Undisputed Facts of Defendants, Marysville Borough and Patrolman Carl Lehman, individually and as a Patrol Officer for Marysville Borough Police Department at ¶30 and Plaintiff's Response to Defendants' Statement of Undisputed Facts at ¶30.* Some time later, the plaintiff was released to his father. *Id.*

The plaintiff was charged with possession of a small amount of marijuana and possession of drug paraphernalia. *Id. at ¶20.* After a non-jury trial, the plaintiff was sentenced on June 17, 2004, in the Court of Common Pleas of Perry County. *Complaint at ¶24 and Answer of Defendants, Marysville Borough and Patrolman Carl Lehman to Plaintiff's Complaint at ¶24 and Commonwealth v. Quaid,* 871 A.2d 246, 248 (Pa.Super.Ct. 2005). On the possession of a small amount of marijuana charge, the plaintiff was sentenced to a term of two to thirty days imprisonment and to pay costs. *Complaint at ¶24 and Answer of Defendants, Marysville Borough and Patrolman Carl Lehman to Plaintiff's Complaint at ¶24.* On the possession of drug paraphernalia charge, he was sentenced to probation for one year and to pay costs. *Id.*

The plaintiff appealed to the Superior Court of
Pennsylvania. *See Commonwealth v. Quaid,* 871 A.2d 246
(Pa.Super.Ct. 2005).  On March 17, 2005, the Superior Court
vacated the petitioner's judgment of sentence. *Id. at* 247.  The
Superior Court reasoned that pursuant to the Railroad and Street
Railway Police Act, 22 Pa.C.S.A. § 3303, railroad policemen, such
as Officer Sloan, possess regular police powers while "in and
upon, and in the immediate and adjacent vicinity of, the property
of the corporate authority" and that they also have police powers
"elsewhere within the Commonwealth while engaged in the discharge
of their duties in pursuit of railroad, street railway or
transportation system business." *Id. at* 253.  The Superior Court
concluded that under the facts of the case, Officer Sloan was not
engaged in the discharge of his duties as a railroad police
officer when he stopped the plaintiff. *Id.*  The Superior Court
determined that the stop did not occur on Norfolk Southern
property.  The Court therefore proceeded to address the question
of whether the place where the plaintiff was observed driving in
an erratic manner by Officer Sloan was "in the immediate and
adjacent vicinity of" Norfolk Southern property. *Id.*  The Court
concluded that the Commonwealth had failed to carry its burden of
establishing that the portion of the road where Officer Sloan
observed the plaintiff driving in an erratic manner was "in the
immediate and adjacent vicinity of" Norfolk Southern property.
*Id. at* 254.  Therefore, the court concluded that pursuant to
state law the stop by Officer Sloan was illegal and that the

trial court erred by denying the plaintiff's motion to suppress the evidence gathered as a result of the stop. *Id.*

C.  Discussion.

The plaintiff claims that the defendants violated his rights under the First, Fourth and Fourteenth Amendments.

The plaintiff's claims are brought pursuant to 42 U.S.C. § 1983.  "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Shuman v. Penn Manor School Dist.,* 422 F.3d 141, 146 (3d Cir. 2005).  Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." *Id.*  To establish a claim under § 1983, a plaintiff must establish "'both a deprivation of a federally protected right and that this deprivation was committed by one acting under color of state law.'" *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005)(quoting *Lake v. Arnold*, 112 F.3d 682, 689 (3d Cir. 1997)).  Additionally, the plaintiff must demonstrate that the defendants' actions were the proximate cause of the harm he suffered.  *Hedges v. Musco,* 204 F.3d 109, 121 (3d Cir. 2000).

12

1. The Fourth Amendment.


The Fourth Amendment provides:

The right of the people to be secure in their persons,
houses, papers, and effects, against unreasonable
searches and seizures, shall not be violated, and no
Warrants shall issue, but upon probable cause,
supported by Oath or affirmation, and particularly
describing the place to be searched, and the persons or
things to be seized.

"The essential purpose of the proscriptions in the Fourth
Amendment is to impose a standard of "reasonableness" upon the
exercise of discretion by government officials, including law
enforcement agents, in order 'to safeguard the privacy and
security of individuals against arbitrary invasions.'" *Delaware
v. Prouse,* 440 U.S. 648, 653-54 (1979)(footnote omitted)(quoting
*Marshall v. Barlow's Inc.,* 436 U.S. 307 (1978)).  "Thus, the
permissibility of a particular law enforcement practice is judged
by balancing its intrusion on the individual's Fourth Amendment
interests against its promotion of legitimate governmental
interests." *Id.* at 654.


The Supreme Court has distilled from the general
reasonableness standard a series of specific rules describing
conduct that is presumptively reasonable in particular scenarios.
*Christopher v. Nestlerode*, 373 F.Supp.2d 503, 514 (M.D.Pa.
2005)(Conner, J.)  "These represent the outcome of the weighing
of individual and government interests involved in certain
archetypal situations." *Id.*   These rules include the following:

13

a police officer who observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot may briefly stop the suspicious person and make reasonable inquiries aimed at confirming or dispelling his suspicions - *Terry v. Ohio*, 392 U.S. 1, 30 (1968);  a police officer who is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others may conduct a patdown search to determine whether the person is in fact carrying a weapon - *Terry, supra,* 392 U.S. at 24; a police officer may arrest a person if there is probable cause to believe that a criminal offense has been or is being committed - *Devenpeck v. Alford,* 543 U.S. 146, 152 (2004); a police officer may search a person incident to a lawful arrest - *United States v. Robinson,* 414 U.S. 218, 235 (1973); and a police officer may search the passenger compartment of the vehicle incident to the lawful arrest of a recent occupant of the vehicle - *Thornton v. United States,* 541 U.S. 615, 623 (2004).

We construe the complaint in this case to contain distinct claims that the stop of the plaintiff's vehicle, the seizure of the pipe and marijuana, the plaintiff's arrest and his prosecution each violated the Fourth Amendment.  We will discuss each of these claims.  We will discuss the claims first with regard to defendant Lehman.

14

A. The Stop.

The stop of the plaintiff's vehicle by Officer Sloan was a "seizure" under the Fourth Amendment. *Delaware v. Prouse,* 440 U.S. 648, 653 (1979).

Officer Sloan, not defendant Lehman, was actually the one who stopped the plaintiff's vehicle.  However, the plaintiff contends that defendant Lehman had requested Sloan to make the stop, and defendant Lehman testified at his deposition that Sloan stopped the plaintiff upon his instructions. *Lehman Dep. at 11.* Thus, defendant Lehman may be liable to the plaintiff if the stop violated the Fourth Amendment.

Before we address the question whether the stop violated the Fourth Amendment, we will address the Pennsylvania Superior Court's opinion.  The Superior Court of Pennsylvania determined that Officer Sloan did not have authority under state law to stop the plaintiff.  However, that determination made under state law does not address or answer the question whether the stop violated the Fourth Amendment.

The Fourth Amendment does not depend upon the law of a single state for substantive meaning.  *Christopher*, *supra,* 373 F.Supp.2d at 513.  The Fourth Amendment establishes an

15

overarching, minimum code of conduct with which all officials,
state and federal, must comply. *Id.* "So long as officials
conform to that code, their activities - even if illegal under
state law - do not implicate constitutional concerns." *Id.*  Where
a public seizure of a person is based on individualized
suspicion, "the constitutional prerequisite of individualized
suspicion constrains police discretion, adequately protecting
against arbitrary deprivations of privacy and liberty  without
the need for further inquiry into state interests justifying the
particular seizure." *Id.* at 516.  "[T]he 'reasonableness' of a
seizure, when based on individualized suspicion, is judged
without reference to the authority of officials to effect an
arrest under state law." *Id.* at 518.  Whether the official was
empowered by state law to detain the suspect for the offense does
not matter in the Fourth Amendment analysis. *Id.* at 516.

Whether or not Officer Sloan had authority under state law
to stop the plaintiff's vehicle is not determinative of whether
the stop violated the Fourth Amendment.  Whether the stop
violated the Fourth Amendment depends upon whether is was
reasonable.

A police officer who has either probable cause or reasonable
suspicion to believe that a traffic violation has occurred may
stop an automobile. *See Whren v. United States,* 517 U.S. 806,
(1996)("As a general matter, the decision to stop an automobile

is reasonable where the police have probable cause to believe that a traffic violation has occurred."); *United States v. Delfin-Colina,* __F.3d __, __, 2006 WL 2708496 (3d Cir. Sept. 22, 2006)(holding that the *Terry* reasonable suspicion standard applies to routine traffic stops and indicating that although probable cause is sufficient to support a traffic stop it is not necessary).

In the instant case, defendant Lehman contends that he had reasonable suspicion to request Officer Sloan to stop the plaintiff.  Defendant Lehman testified at his deposition as follows:

> Q: Now, it is true that Sloan had stopped Mr. Quaid upon your instruction?
> A: Yes.
> Q: And how did you – how did you communicate that instruction to Mr. Sloan?
> A: I communicated through my radio to Perry County dispatch and had them tell him to stop the vehicle.
> Q: So the Perry County dispatch was like a contact between the two of you?
> A: Yes.
> Q: Any why did you instruct Mr. Sloan to stop Mr. Quaid the evening?
> A: Because when I got the call from Perry County dispatch, the person that was operating the vehicle that he was behind was driving at a high rate of speed, slowing down, speeding up, driving over the yellow line and over the white line on the berm, kicking up stones and dirt.  And basically they were driving erratically and carelessly.  And I told him to stop the vehicle for safety reasons.  I didn't want anybody getting hurt.

*Lehman Dep.* at 11-12.

The plaintiff contends that there was not probable cause for the stop.  The plaintiff testified at his deposition as follows:

Q: Okay. Now, Officer Sloan, who's not here today, but who was - and I'm giving you some background to preface my next question, apparently had a conversation with my police officer later on that evening, and told him that he observed your car weaving all over the road.  That's kind of a shorthand version of what he's describing.
A: Okay.
Q: What I would like you to do, if you can, is tell me, you know, how your driving was working out as you were riding back towards Marysville?
A: Okay.  As I came back southbound -
Q: You were the driver actually, correct?
A: Yeah, I was operating the vehicle.
Q: Yeah.
A: I was driving back southbound to take Mr. Koury back home - or Koury.
Q: However you pronounce his name?
A: Taking him back, and as I was, I - as far as I know the speed limit's like - it fluctuates, but I was going well around the speed limit -
Q: Sure.
A: -the posted speed limit between both sides of the road, in between where the lane is.  I mean, I don't know how the condition would be, but as far as I -
MR. KOPE: So you weren't driving back and forth?
THE WITNESS: There was no erratic driving as far as I'm concerned. I - yeah. The visibility was perfectly fine that night.  So as to the braking and going fast, I could not say that that's to my recollection how I had been driving erratically as stated.  Because I know from another vantage point, you know, it could seem that way.
     But, like I said, it fluctuates.  I think it goes up, down, when you're coming down any highway, sometimes it might.  But I was well aware of my surroundings, recognizing -
MR. KOPE: So you-
Q: So, again, how you were driving that night is not really the focus of my -
A: Okay.
Q: - inquiries anyway.
A: I was coming southbound.
Q: I'm just trying to get - you're coming southbound, Officer Sloan - I don't think there's any dispute about this, did tell Office[r] Lehman that he thought you were - or reported to Officer Lehman that you were driving -
A: Okay.
Q: - erratically.  Any my question to you is, do you have any recollection -
A: No.

```
Q: - to your knowledge, thinking about the events that
evening as to how -
A: No.
Q: - you were, in fact, driving?
A: Yeah, I was driving perfectly, obeying every part of
the traffic rule -
Q: In other words, you didn't -
A: -through the highway there, going southbound.
Q: You didn't feel that you were driving erratically?
A: No.
```

*Quaid Dep.* At 19-22.

Defendant Lehman's request that Officer Sloan stop the plaintiff's vehicle was based on what was reported to him to have been reported to Perry County dispatch by Officer Sloan. "The legality of a seizure based solely on statements issued by fellow officers depends on whether the officers who *issued* the statements possessed the requisite basis to seize the suspect." *Rogers v. Powell,* 120 F.3d 446, 453 (3d Cir. 1997). Thus, whether defendant Lehman had probable cause or reasonable suspicion to request Officer Sloan to stop the plaintiff's vehicle depends on whether Officer Sloan had probable cause or reasonable suspicion.

If believed, Officer Sloan's statements that he observed the plaintiff driving erratically would support a finding that Sloan had probable cause and *a fortiori* reasonable suspicion to stop the plaintiff's vehicle. The plaintiff, however, disputes that he was driving erratically. Based on the plaintiff's testimony that he was driving perfectly and obeying all traffic laws, we conclude that there may be a genuine factual dispute about

whether there was probable cause or reasonable suspicion to stop the plaintiff's vehicle.[1]  This dispute is material to the plaintiff's claim that the stop violated the Fourth Amendment. Accordingly, we conclude that defendant Lehman is not entitled to summary judgment on the merits of the plaintiff's Fourth Amendment claim based on the stop.

Although we conclude that defendant Lehman is not entitled to summary judgment on the merits of the plaintiff's Fourth Amendment claim based on the stop, we conclude that defendant Lehman is entitled to qualified immunity from damages on the plaintiff's Fourth Amendment claim based on the stop.

Despite their participation in constitutionally impermissible conduct, government officials "may nevertheless be shielded from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hope v. Pelzer,* 536 U.S. 730, 739 (2002)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity operates to ensure that, before they are subjected to suit, officers are on notice that their conduct is unlawful. *Id.*

---

[1] Other portions of the plaintiff's testimony are not consistent with his statement that he was driving perfectly.

Even though amounting to a constitutional violation, actions of a police officer acting in reliance on statements from other police officers may be reasonable nonetheless and thus protected by the doctrine of qualified immunity. *Rogers, supra,* 120 F.3d at 455.  An officer is entitled to qualified immunity from liability in a civil rights suit for an unlawful seizure provided it was objectively reasonable for him to believe, on the basis of the statements of the other officer, that the requisite individualized suspicion for the seizure existed. *Id.* (addressing probable cause in the context of an arrest).

Defendant Lehman acted in reliance on statements by Officer Sloan that the plaintiff was driving erratically including driving at a high rate of speed, slowing down and then speeding up, and driving over the yellow and white lines of the road.  It was objectively reasonable for defendant Lehman to believe on the basis of Officer Sloan's report that there was probable cause to stop the plaintiff's vehicle.  Accordingly, we conclude that the defendant Lehman is entitled to qualified immunity on the plaintiff's Fourth Amendment claim based on the initial stop of the vehicle.

B. Search and Seizure of the Pipe and Marijuana.

Next, we address the frisk of the plaintiff and the seizure of the marijuana pipe and marijuana.

21

A police officer may conduct a reasonable search for weapons where he has reason to believe that he is dealing with an armed and dangerous individual. *Terry v. Ohio,* 392 U.S. 1, 27 (1968). "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." *Minnesota v. Dickerson,* 508 U.S. 366, 373 (1993)(quoting *Adams v. Williams,* 407 U.S. 143, 146 (1972)). "[A] pat-down for weapons can occur only where the police officer is 'able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *United States v. Kithcart,* 218 F.3d 213, 219 (3d Cir. 2000)(quoting *Terry, supra,* 392 U.S. at 21). The test is whether a reasonably prudent officer in the circumstances would be warranted in the belief that his safety or that of others was in danger. *Id.*

According to defendant Lehman's testimony at his deposition, he conducted a pat-down of the plaintiff based on a reasonable suspicion that the plaintiff was armed.  Defendant Lehman testified at his deposition:

> Q: And in your incident report, which I believe you
> have in front of you, you had mentioned that you
> noticed a bulge in Mr. Quaid's front pocket. Is that
> true?
> A: Yes.
> Q: What did the bulge look like?
> A: Honestly, it looked like a weapon to me.
> Q: How so? How does it look like a weapon, if you don't
> mind me asking?

22

A: It was that long and it was shaped like this
(indicating), almost like a check mark.
Q: So that would indicate what type of weapon to you
usually?
A: Looked sort of like a handgun to me, small handgun.
Q: Did you question Mr. Quaid about that?
A: I asked him if he had any weapons on him.
Q: And this was after you noticed the bulge?
A: Yes.
Q: What was his response?
A: His response was, no.  And when he said, no, he took
his hand and put it over top of his pocket.
Q: Trying to conceal the bulge?
A: I guess.
Q: Now, again, this question may seem obvious, but
other than his - the bulge and his action in concealing
the bulge, did you have any other reason to believe
that Mr. Quaid may have been armed and dangerous?
A: The odor of marijuana.
Q: And can you explain that, why that would give you
that kind of suspicion?
A: Typically when drugs are involved, weapons have been
involved.
Q: Is this true with marijuana even?
A: Yes.
Q: After Mr. Quaid had, you say, tried - attempted to
conceal the bulge, and you had then asked him if he had
any weapons, what was his response?
A: When I asked him if he had any weapons?
Q: Yeah, asked him if he had any weapons?
A: That's when he took his hands and put it over his
pocket and said, no.
Q: Sorry about that.  Okay, He said, no.  And then what
was your response in kind?
A: I told him I was going to pat him down for my
safety.
Q: Any you proceeded to do that?
A: Yes, I did.
Q: And you patted the bulge?
A: Yes.
Q: At that point did you still feel that it was a
weapon?
A: No.
Q: What did you suspect at that point?
A: A marijuana smoke pipe.
Q: So that's what it felt like to you?
A: Yes.
Q: Now, you would agree, Mr. Lehman, that a marijuana
smoke pipe is considerably smaller than a handgun?
A: It depends on what kind of marijuana smoke pipe you have.
Q: Well, what kind did he have?
A: He had one that was about that big (indicating).

Q: It was pretty big?
A: Yeah.  A little bit larger than some of the other
ones that I've dealt with, like Mr. Koury's.
Q: Bear with me a second, get my place.  At that point
did you - after you felt what you had suspected at the
time was a marijuana pipe, did you reach in to grab it,
or did you ask him to pull it out for you?
A: No, I pulled it out.
Q: So it was your hand that reached into the pocket?
A: I didn't have to reach down into his pocket, I mean,
the top of it was almost sticking out the top.
Q: So you just kind of grabbed it?
A: I grabbed it with two fingers and pulled it out.
Q: At that point I believe your incident report states
that a baggy of marijuana also fell out?
A: A baggy of suspected marijuana at that time, which
later was confirmed to be marijuana.
Q: Did you arrest Mr. Quaid at this point?
A: Yes, I did.
Q: He was under arrest officially?
A: Yes.

*Lehman Dep.* at 30-34.


     The plaintiff testified at his deposition about defendant

Lehman's seizure of the pipe and marijuana as follows:

Q: So Officer Lehman asked that question?
A: Yeah, he asked how much it was, if it was indeed
where I was coming from, the bar itself.
Q: And did you answer those questions?
A: Yeah.
Q: Okay.
A: And this went on like a good five, ten minutes.
Then without any - any type of attempt of anything, he
just reached over in my pocket, and threw me off guard
a little bit, because like I said, it wasn't like
getting right - it was like a couple minutes we were
talking, and it was like, you know, I didn't know what
was  - reaches in my pocket, said he worked in
narcotics or something, you know.
So I let him do his job.  And when he did do that is
when he asked if I had ever been in trouble before.  He
was pretty persuasive in the fact of what I had in my
pocket, you know, as to do you know what - you know.
Then took me over to his car where he had parked and
gave me a breathalyzer.  And after that was done, he
took my wallet, went through that.   . . .  You know,
he was going through my personal belongings,
everything, my wallet, my phone, and then told me, you

know - and as far as I knew, I was under arrest, put me
in the back of the cruiser.
Q: Well, up to this point in time had the pipe been
identified or produced?
A: This was in the pocket of mine, I had - what would
you consider it - yeah, I don't know, it was actually -
Q: Did the pipe come out of the pocket before you left
the scene?
A: He had it in his hand.
Q: Okay.
A: When he reached in, he actually grabbed that.  And
like I had said, after he had taken it, I guess he put
it in a bag or something, I don't know.
Q: Now, paragraph 19 of the complaint, I'm just going
to read what it says, and then ask you to continue with
your description.  Says - Second sentence says,
Patrolman Lehman then reached into Mr. Quaid's pocket
and pulled out a smoking pipe, and there's a semicolon,
and then a small bag with a small amount of marijuana
also fell out of Mr. Quaid's pocket, it that correct?
A: As to the statement here, yeah, that - yeah, right.
That's correct.

*Quaid Dep.* at 28-30.


Although the plaintiff's deposition testimony is not

entirely clear about whether defendant Lehman patted his pocket

before he reached in and seized the pipe, in his complaint the

plaintiff alleges that defendant Lehman reached over, patted his

pants pocket, and then reached into the pocket and pulled out

the pipe. *Complaint at ¶19.*  There is a genuine factual dispute

about whether defendant Lehman told the plaintiff that he was

going to pat the plaintiff down before he reached over, patted

his pocket and seized the pipe.  This factual dispute is not

material, however, because accepting as true the plaintiff's

testimony nevertheless a reasonable trier of fact could not

conclude that a reasonable officer in defendant Lehman's

circumstances would not be warranted in the belief that the

25

plaintiff was possibly armed and a pat down warranted.  The
plaintiff's testimony does not shed doubt on defendant Lehman's
testimony that he smelled marijuana smoke, that weapons are often
involved where drugs are involved, and that he observed a bulge
in the plaintiff's pocket the shape of which led him to believe
that it may have been a small handgun.  Given these
circumstances, the pat down was based on specific and articulable
facts leading to a reasonable suspicion that the plaintiff was
armed.  Accordingly, we conclude that the pat down of the
plaintiff's pocket was reasonable under the Fourth Amendment.

Defendant Lehman testified that once he felt the plaintiff's
pocket he realized that the bulge was not a weapon but was a
marijuana pipe.  Given that defendant Lehman immediately
recognized the bulge as contraband during his pat-down for
weapons, the seizure of the pipe was authorized under the plain
touch doctrine. *Minnesota v. Dickerson,* 508 U.S. 366, 375-76
(1993)("If a police officer lawfully pats down a suspect's outer
clothing and feels an object whose contour or mass makes its
identity immediately apparent, there has been no invasion of the
suspect's privacy beyond that already authorized by the officer's
search for weapons; if the object is contraband, its warrantless
seizure would be justified by the same practical considerations
that inhere in the plain-view context.").

There is no dispute that when defendant Lehman pulled the pipe out of the plaintiff's pocket a small bag of marijuana fell out with the pipe.  Once the bag of marijuana fell out and was in plain view, it was reasonable for defendant Lehman to seize the marijuana pursuant to the plain view doctrine. *See generally Horton v. California,* 496 U.S. 128 (1990)(discussing plain view doctrine).

C. Arrest.

Next, we address whether defendant Lehman's arrest of the plaintiff violated the Fourth Amendment.

"[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford,* 543 U.S. 146, 152 (2004).

Given that defendant Lehman smelled marijuana smoke coming from the plaintiff's vehicle and given the discovery of the pipe and small bag of what defendant Lehman suspected was marijuana, defendant Lehman had probable cause to arrest the plaintiff for possession of marijuana and possession of drug paraphernalia. Accordingly, the arrest was reasonable under the Fourth Amendment.

D. Search of the Plaintiff and his Car.

Next, we turn to the search of the plaintiff and his car.

Defendant Lehman testified that he searched the plaintiff and the passenger compartment of the plaintiff's vehicle after he arrested the plaintiff.  These searches were reasonable under the Fourth Amendment as searches incident to a lawful arrest. *See United States v. Robinson,* 414 U.S. 218, 235 (1973)(holding that where there has been a lawful custodial arrest a full search of the person is a reasonable search under the Fourth Amendment); *Thornton v. United States,* 541 U.S. 615, 623 (2004)(holding that once an officer determines that there is probable cause to make an arrest of a recent occupant of a vehicle, it is reasonable to allow officers to ensure their safety and to preserve evidence by searching the entire passenger compartment of the vehicle).

E. Malicious Prosecution.

The plaintiff contends that defendant Lehman initiated a prosecution against him without probable cause.

In order to prevail on his malicious prosecution claim under the Fourth Amendment, the plaintiff must show that the defendant lacked probable cause to arrest him. *See Wright v. Philadelphia,* 409 F.3d 595, 604 (3d Cir. 2005).  As indicated

28

above, defendant Lehman had probable cause to arrest the plaintiff.  Accordingly, defendant Lehman is entitled to summary judgment on the plaintiff's Fourth Amendment malicious prosecution claim.

F. Fourth Amendment Claims against Marysville Borough.

Next, we turn to the plaintiff's Fourth Amendment claims against Marysville Borough.

A municipality cannot be held liable for the unconstitutional acts of its employees on a theory of *respondeat superior*. *Monell v. Department of Social Servs.,* 436 U.S. 658, 691 (1978).  "Instead, a municipality may only be liable for the torts of its employees in one of three ways: First, the municipality will be liable if its employee acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity; second, liability will attach when the individual has policy making authority rendering his or her behavior an act of official government policy; third, the municipality will be liable if an official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes." *McGreevy v. Stroup,* 413 F.3d 359, 367 (3d Cir. 2005)(citations omitted).

The plaintiff has not presented evidence that defendant Lehman acted pursuant to an official policy of the Borough, that defendant Lehman had policy making authority within the Borough or that an official ratified defendant Lehman's action in requesting Officer Sloan to stop the plaintiff's vehicle.  Thus, defendant Marysville Borough is not liable on the basis of defendant Lehman's stop of the plaintiff's vehicle.  The complaint contains claims that Marysville Borough failed to train and supervise its officers.  However, the plaintiff has presented no evidence to support those claims.

Defendant Marysville Borough is entitled to summary judgment on the plaintiff's Fourth Amendment claims.

2. First Amendment.

The plaintiff claims that the defendants violated his First Amendment rights by retaliating against him for speaking out.

Retaliation for the exercise of First Amendment rights is a constitutional violation.  *Mount Healthy City Board of Education v. Doyle*, 429 U.S. 274 (1977).  "Official reprisal for protected speech 'offends the Constitution [because] it threatens to inhibit exercise of the protected right,' and the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions,

including criminal prosecutions, for speaking out." *Hartman v. Moore,* 126 S.Ct. 1695, 1701 (2006)(citations omitted).

The plaintiff has failed to present any evidence that he spoke out or engaged in any other conduct protected by the First Amendment.  Moreover, that plaintiff's First Amendment retaliation claims fail because, as determined above, there was probable cause for the plaintiff's arrest and prosecution.  *See Hartman, supra,* 126 S.Ct. at 1707 (holding that lack of probable cause must be pleaded and proven by the plaintiff in a First Amendment retaliatory prosecution claim).

3. Substantive Due Process.

The plaintiff claims that the defendants violated his substantive due process rights.

"'[T]he core of the concept' of due process is 'protection against arbitrary action.'" *Kaucher v. County of Bucks,* 455 F.3d 418, 425 (3d Cir. 2006)(quoting *County of Sacramento v. Lewis,* 523 U.S. 833, 845 (1998)). "'[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Id.*  Executive action violates substantive due process only when the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience. *Id.*  "The exact degree of wrongfulness necessary to

31

reach the "conscience shocking" level depends upon the circumstances of a particular case." *Miller v. City of Philadelphia*, 174 F.3d 368, 375 (3d Cir. 1999).  "The level of culpability required to shock the conscience increases as the time state actors have to deliberate decreases." *Sandford v. Stiles,* 456 F.3d 298, 309 (3d Cir. 2006).  "In a "hyperpressurized environment," an intent to cause harm is usually required." *Id.*  "On the other hand, in cases where deliberation is possible and officials have the time to make "unhurried judgments," deliberate indifference is sufficient." *Id.*  There are circumstances involving something less urgent than a "split-second" decision but more urgent than an "unhurried judgment" including situations in which the state actor is required to act in a matter of hours or minutes and in which there is some urgency and only "hurried deliberation" is practical.  *Id.* at 309-310.  In these situations, "the relevant question is whether the officer consciously disregarded a great risk of harm." *Id.* at 310.

The plaintiff contends that the defendants' actions in detaining him and interrogating him for a period of four hours violated his right to substantive due process.  Even assuming arguendo that there was not either reasonable suspicion or probable cause for the initial stop of the plaintiff's vehicle such a stop does not violate substantive due process. *See generally Albright v. Oliver,* 510 U.S. 266, 275 (1994)(holding

32

that claim of prosecution without probable cause can not be brought as a substantive due process claim).  Although the plaintiff contends that he was taken to the police station and questioned for four hours,[2] his deposition testimony indicates that he was not continuously questioned while at the station and the plaintiff has not presented any evidence of ill treatment while at the station. *See Quaid Dep.* at 33-38.  The plaintiff has not presented any evidence of any acts by the defendants so egregious that they could under any test be said to shock the conscience.  Accordingly, the defendants are entitled to summary judgment on the plaintiff's substantive due process claim.

    4. State Law Claims.

    Count II of the complaint contains state law claims of unlawful search and seizure, false arrest, malicious prosecution,

---

    [2] There is a factual dispute about how long the plaintiff was detained at the police station. It is undisputed that the plaintiff and defendant Lehman arrived at the station at 3:34 a.m. and that the plaintiff at some time later was released to his father. *Statement of Undisputed Facts of Defendants, Marysville Borough and Patrolman Carl Lehman, individually and as a Patrol Officer for Marysville Borough Police Department at ¶30 and Plaintiff's Response to Defendants' Statement of Undisputed Facts at ¶30.* The plaintiff contends that he was at the station for four hours. *Quaid Dep.* at 33-34. Defendant Lehman contends that the plaintiff was released at 4:35 a.m. *Lehman Dep.* at 47. Defendant Lehman's daily police log indicates that the plaintiff and Koury were released at 4:35 a.m. and that at 4:50 a.m. defendant Lehman went out on anther call. *Lehman Dep.* at Exhibit D7. We accept the plaintiff's version as true for purposes of deciding the summary judgment motion.

and intentional infliction of emotional distress.  The defendants contend that they are entitled to immunity from the plaintiff's state law claims pursuant to Pennsylvania's Political Subdivision Tort Claims Act.

We have supplemental jurisdiction over the plaintiff's state law claims.  However, whether to exercise supplemental jurisdiction is within the discretion of the court.  Subsection (c) of 28 U.S.C. § 1367 provides that district courts may decline to exercise supplemental jurisdiction over state law claims if the district court has dismissed all claims over which it has original jurisdiction.  Where the claim over which the district court has original jurisdiction is dismissed before trial, "the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000)(quoting *Borough of West Miflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)).

Judicial economy will not be undermined by the court refusing to exercise supplemental jurisdiction over the plaintiff's state law claims.  If the court declines to exercise supplemental jurisdiction and dismisses the state law claims for lack of jurisdiction, pursuant to 42 Pa.C.S.A. § 5103(b) the plaintiff can "transfer" those claims to a Pennsylvania court.

34

Pursuant to 42 Pa.C.S.A. § 5103(b), the plaintiff may file the pleadings from this case in the state court and the case will proceed from there.

Convenience does not provide a reason for the court to exercise supplemental jurisdiction over the state law claims. There is no indication in the record that there is any reason why it would be substantially less convenient for any of the parties to address the state law claims in a state court rather than in this court.

Fairness also does not provide a reason for the court to exercise supplemental jurisdiction over the state law claims.  As indicated above, pursuant to 42 Pa.C.S.A. § 5103(b) the plaintiff may pursue his state claims in state court.

In this case considerations of judicial economy, convenience, and fairness to the parties do not provide an affirmative justification for exercising supplemental jurisdiction over the state law claims.  Accordingly, we will decline to exercise supplemental jurisdiction over the state law claims.

IV.  Order.


**IT IS ORDERED** that the plaintiff's motion (doc. 46) for leave to amend his complaint is **DENIED.  IT IS FURTHER ORDERED** that the defendants' motion (doc. 48) for summary judgment is **GRANTED IN PART** and defendants Lehman and Marysville Borough are granted summary judgment on the plaintiff's federal claims.  The court declines to exercise supplemental jurisdiction over the plaintiff's state law claims and the state claims are therefore **DISMISSED FOR LACK OF JURISDICTION.  IT IS FURTHER ORDERED** that the pretrial conference scheduled for October 19, 2006 and the trial scheduled for November 6, 2006 are **CANCELED.**  The Clerk of Court is directed to enter summary judgment in favor of defendants Lehman and Marysville Borough on the plaintiff's federal claims and to close the case file.


*/s/ J. Andrew Smyser*
J. Andrew Smyser
Magistrate Judge

Dated:  September 28, 2006.